In the Matter of Letcher H. BOWLES and Benjamin A. Bowles, individually and co-partners t/a B. A. Bowles Company, Bankrupts.

No. 2043.

United States District Court
W. D. Virginia,
Roanoke Division.

July 16, 1962.

Woods, Rogers, Muse & Walker, Roanoke, Va., and W. H. Jolly, Salem, Va., for petitioning creditors.

**880**

Wm. R. L. Craft, Jr., Christianburg, Va., for Bowles.

Ernest W. Ballou, Roanoke, Va., for John D. Martin, trustee.

MICHIE, District Judge.

An involuntary petition in bankruptcy was filed in the United States District Court for the Western District of Virginia, Roanoke Division, on October 8, 1959 against Letcher H. Bowles and Benjamin A. Bowles, a partnership trading under the name of B. A. Bowles Company. In due course the defendants were adjudicated bankrupts. There is a voluminous record of the subsequent proceedings, most of which do not appear to be material to the issue before this court. That issue arises on an objection on the part of one of the creditors, Colonial-American National Bank, hereinafter called the Bank, to the granting of a discharge to the bankrupt Letcher H. Bowles. B. A. Bowles was the father of Letcher H. Bowles and was not active in the business. No objection was made to his discharge.

The Bank, one of the principal creditors, objected to the discharge of Letcher H. Bowles on two grounds: first that he had submitted a false financial statement in order to secure a loan from the Bank and second that in order to obtain said loan he had stated that his brother, C. D. Bowles, did not have a lien on a certain piece of equipment which he pledged by chattel mortgage as security for the loan when in fact C. D. Bowles did have a lien on that piece of equipment.

Before getting into the more serious question it will be well to dispose of the second ground of objection. It appears from the uncontradicted evidence that C. D. Bowles did have a lien on the piece of equipment in question, along with numerous other pieces of equipment owned by Letcher H. Bowles; that Letcher H. Bowles, before applying for the loan from the Bank, called his brother to ask if the brother did have a lien on that particular piece of equipment and the brother replied that he did not. The brother later admitted that he had so stated but subsequently it developed that he had been mistaken and did in fact hold such a lien. The representation of Mr. Letcher Bowles to the effect that the property was free and clear of any lien was therefore untrue. And when the crash came the piece of equipment was sold under the B. A. Bowles lien. But the representation was not false in the sense that that word is used in the Bankruptcy Act. As said in Remington on Bankruptcy (6th Ed.), Vol. 7, p. 252:

> "Nothing in the statute explicitly says that the statement must have been 'knowingly,' 'intentionally,' or 'fraudulently' made, or that it must have been made for the purpose of obtaining credit. However, the entire purport is that, to be ground for denial of discharge, it must have been intentionally false, with knowledge of its falsity, or recklessly made without regard to truth. A 'false' statement, it is said, must be one that is knowingly false or made recklessly without an honest belief in its truth and with a purpose to mislead or deceive. * * *"

I therefore exclude this statement about the lien as a ground for denying discharge and turn to a consideration of the more serious charge.

Without getting into the facts and arguments at this point I may state that the Referee granted the discharge despite the objection but went on to hold that the individual debt to the Bank was not thereby discharged.

Section 14 of the Bankruptcy Act (11 U.S.C.A. § 32), as amended in 1960, provides *inter alia* that a discharge shall be granted by the court unless it is "satisfied that the bankrupt has * * * while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in

writing respecting his financial condition or the financial condition of such partnership or corporation * * *."

There is no question but that Mr. Bowles was engaged in business as a partner and that he obtained for such business money from the Bank. However two questions are raised: (1) whether he gave to the Bank prior to the making of the loan "a materially false statement in writing respecting * * * the financial condition of such partnership" and (2) whether the giving of such statement to the Bank resulted in his getting the loan, or, stating the second question slightly differently, whether the Bank relied upon the statement in making the loan.

The Referee found that the statement was false and that the Bank did rely upon it. But he nevertheless granted the bankrupt a discharge and also held that the particular debt to the Bank would not be discharged by the general discharge. There would seem to be no basis for such a conclusion under any circumstances. Section 17, sub. a of the Bankruptcy Act (11 U.S.C.A. § 35, sub. a) does provide, as amended in 1960, that "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *."

But since the bankrupt was engaged in business as a partner in a partnership it is apparent that if the debt would not be dischargeable under Section 17 the bankrupt would not be entitled to a discharge under Section 14. And furthermore the Referee would, in any event, have no power to pass upon the effect of a discharge upon a debt of one of the classes listed in Section 17. As said in the supplement to Vol. 8 of Remington, Section 3314:

"The exceptions provided for in § 17 are rights which Congress has chosen to exempt from bankruptcy administration and to leave standing in favor of creditors, the same as before bankruptcy proceedings. The exemption is self-executing and no decree of a bankruptcy court is needed or is able to give it establishment", citing White v. Public Loan Corp., 8 Cir., 247 F.2d 601.

The question that we have for decision here therefore is whether the transaction with the Bank was of such a character that the discharge should have been denied to the bankrupt.

The facts as disclosed by the evidence seem to be that Mr. Bowles approached Mr. Robertson of the Bank in regard to making a loan on a crane which he expected to sell shortly and upon such sale to repay the loan. Mr. Robertson indicated that the Bank would be willing to make the loan but as he was going to Florida shortly he told Mr. Bowles to come back later to see Mr. McCathern of the Bank who would handle the matter. Mr. Bowles did come back to see Mr. McCathern who told him to bring in an appraisal of the value of the property and a financial statement and again indicated that the loan would be made. Mr. McCathern was under the impression that Mr. Robertson had made a commitment to make the loan provided the financial statement was in order and the appraisal was in order.

Mr. Bowles did bring an appraisal and a financial statement to Mr. McCathern and the loan was made. The controversy of course hinges around the financial statement.

The loan was made on February 27 1959 and the financial statement was dated January 31, 1959. The statement shows on its face that it is not a complete normal financial statement. Under the heading "Liabilities" there is found the item "Notes payable—current por-

tion—equipment—1 yr. $18,899.92." Mr. Bowles testified that Mr. McCathern hardly looked at the statement, if he looked at all, and that the whole transaction took not over three minutes. The statement showed a net worth of $201,318.96. Mr. McCathern testified that while the loan was made mainly on the security of the equipment, which was believed to be free and clear (though the Bank had not had the record checked with respect to this), yet he did also rely upon the strong financial statement that was presented and would not have made the loan if the financial statement had not been satisfactory.

There is some mystery as to the origin of the statement. The regular accountant for the partnership denies having made it. Mr. Bowles testified that he went home to find a financial statement and dug it out of his desk. It is admitted that the total notes payable of the concern greatly exceeded the $18,899.92 figure shown on the statement. But the explanation, which is fairly indicated on the statement itself, is that these were the notes that would have to be paid within one year. At least it would seem that if Mr. McCathern had studied the statement carefully and had, indeed, been relying upon it he would have noticed the reference to the "1 yr." and would have inquired what it meant and doubtless would then have found out that there were other notes payable not shown on the statement.

There is no convincing evidence to the effect that the statement is false in any respect except as to the total of notes payable. And it shows on its face that it is not complete as to that. Furthermore the extent of reliance by the Bank on the statement may be questioned since Mr. McCathern evidently did not study it closely enough to notice the unusual language about the notes which plainly showed that the statement was not complete. Undoubtedly if he had noticed that he would have asked what the total of the notes actually was.

On the whole it seems to me therefore that one must conclude that the statement has not been proven false and that the Bank probably did not rely upon it. It follows that the Referee's action in granting the discharge was correct and must be upheld.

Very little need be said as to the opinion of the Referee to the effect that though the discharge was granted as to all other debts the individual debt to the Bank should not be discharged. As indicated above this is a matter upon which the Referee and this court do not have to pass. The question can be raised when the Bank undertakes to enforce the debt against Mr. Bowles or any of his property. I will do no more here (and perhaps should not even do that) than to call attention to the fact that the language of Section 17 of the Bankruptcy Act relating to what debts are not dischargeable, even when the bankrupt is granted a general discharge, is in this respect practically identical with the language of Section 14 stating when a business bankrupt should not be discharged by reason of the making of a false statement. It is therefore difficult to see how this business bankrupt could be entitled to a discharge under Section 14 and the debt in question be nondischargeable under Section 17.

In this respect attention is also called to the excerpts from the report of the Committee on the Judiciary of the House of Representatives in favorably reporting the 1960 amendments to the Bankruptcy Act as found in the U.S.Code Congressional and Administrative News for 1960, Vol. 2 at pp. 2954–56.

An order will be entered sustaining the action of the Referee in granting the bankrupt his discharge but reversing the order of January 18, 1962 which provided that the discharge would not apply to the debt due to the Bank.